**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000801
29-NOV-2013
08:25 AM**

NO. CAAP-12-0000801

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
KEKOA J.K. KRUEGER, Defendant-Appellant,
and
LURGUIAL M. COUNTS, NIQUITTA KILMER, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CRIMINAL NO. 11-1-0149)

MEMORANDUM OPINION
(By: Foley, Presiding J., Reifurth and Ginoza, JJ.)

Defendant-Appellant Kekoa J. K. Krueger (Krueger) appeals from the "Judgment of Conviction and Sentence" entered August 27, 2012 in the Circuit Court of the Fifth Circuit[1] (circuit court). Krueger was convicted of Robbery in the Second Degree, Hawaii Revised Statutes (HRS) § 708-841(1)(a) (1993 & Supp. 2012) (Robbery 2).

On appeal, Krueger contends:

(1) the Deputy Prosecuting Attorney (Prosecutor) engaged in a continuing course of misconduct, warranting reversal; and

(2) the circuit court erred when it amended the charge of Robbery in the First Degree, HRS § 708-840(1)(a) (1993 & Supp. 2012) (Robbery 1) to Robbery 2 and denied his motion for judgment of acquittal.

---

[1] The Honorable Kathleen N. A. Watanabe presided.

## I.  BACKGROUND

On April 28, 2011, Krueger was charged with Robbery 1 and Attempted Assault in the First Degree, pursuant to HRS §§ 705-500 (1993) and 707-710 (1993).  The charges arose from an incident that occurred in the early morning hours of April 6, 2011, in which Krueger and co-defendant Lurguial M. Counts (Counts) allegedly beat and robbed the Complaining Witness (CW).  Counts pled guilty to Robbery 1 and Credit Card Theft.  A third defendant, Niquitta Kilmer (Kilmer), testified for the state in exchange for total immunity.

Krueger went to trial on May 7, 2012.  Four days later, the state rested its case and Krueger moved for judgment of acquittal.  The circuit court denied the motion but amended the charges down to Robbery 2 and Attempted Assault in the Second Degree, HRS §§ 705-500 and 707-711 (Supp. 2012).  On May 15, 2012, a jury found Krueger guilty of Robbery 2 and Attempted Assault in the Third Degree.  The circuit court merged the Attempted Assault charge into the Robbery 2 charge and sentenced Krueger to ten years' imprisonment with a mandatory minimum term of six years and eight months.

## II.  STANDARD OF REVIEW

### A.  Prosecutorial Misconduct

We review allegations of prosecutorial misconduct under the harmless beyond a reasonable doubt standard.  See State v. Rogan, 91 Hawai'i 405, 412, 984 P.2d 1231, 1238 (1999).  Under this standard, we examine the record and determine "whether there is a reasonable possibility that the error complained of might have contributed to the conviction."  Id.  (internal quotation marks omitted.)

### B.  Included Offense

A trial court's determination of whether one offense is included in another is a question of law, reviewed de novo, under the right or wrong standard.  See State v. Rumbawa, 94 Hawai'i 513, 515, 17 P.3d 862, 864 (2001).  Trial courts must provide juries with instructions for any included offenses if the evidence provides a rational basis for a verdict acquitting the defendant of the charged offense and convicting the defendant of

the included offense.  <u>See</u> <u>State v. Haanio</u>, 94 Hawai'i 405, 413, 16 P.3d 246, 254 (2001).

### C.    Judgment of Acquittal

We review motions for judgment of acquittal to determine whether, viewing the evidence in the light most favorable to the prosecution and recognizing the province of the trier-of-fact, a reasonable person might fairly conclude guilt beyond a reasonable doubt.  <u>See</u> <u>State v. Hicks</u>, 113 Hawai'i 60, 69, 148 P.3d 493, 502 (2006).

### III.    DISCUSSION

Krueger contends the Prosecutor engaged in a continuing course of misconduct by: (1) failing to timely provide the defense with discovery; (2) posing improper questions to witnesses and mishandling evidence, compelling defense counsel to object numerous times, which cast him in a negative light; (3) rolling her eyes; and (4) expressing her personal opinion about a witness's truthfulness.  **OB 8-18, 30**

### A.   Failure to provide discovery in a timely fashion

Krueger contends the Prosecutor failed to provide the defense with a copy of a diagram and incident report in violation of Hawai'i Rules of Penal Procedure (HRPP) Rule 16(b)(1)(iii), depriving him of the opportunity to fully prepare for trial. HRPP Rule 16(b)(1)(iii) provides:

**(b) Disclosure by the Prosecution.**

(1) Disclosure of Matters Within Prosecution's Possession. The prosecutor shall disclose to the defendant or the defendant's attorney the following material and information within the prosecutor's possession or control:

.  .  .  .

(iii) <u>any reports or statements of experts</u>, which were made in connection with the particular case or which the prosecutor intends to introduce, or which are material to the preparation of the defense and are specifically designated in writing by defense counsel, including results of physical or mental examinations and of scientific tests, experiments, or comparisons[.]

(Emphasis added.)

The diagram was prepared by the manager of the bar patronized by CW before the incident.  The incident report was prepared by the security guard of the hotel where CW lodged. Neither document is a report or statement of an expert.  Neither

3

document was entered into evidence. Therefore, the prosecutor did not violate HRPP Rule 16(b)(1)(iii) and we discern no prosecutorial misconduct.

### B. Improper questions and mishandling evidence

"[A]lthough no single misstatement or other erroneous remark standing alone [may] have sufficient prejudicial weight to deprive the defendant of a fair trial, the cumulative weight of such errors may create 'an atmosphere of bias and prejudice which no remarks by the trial court could erase.'" State v. Pemberton, 71 Haw. 466, 475, 796 P.2d 80, 84 (citation and internal quotation marks omitted).

Assuming arguendo there was prosecutor misconduct, we consider "whether the cumulative effect of prejudicial conduct going to the issue of guilt is so strong that it overcomes the presumption that the curative remarks of the court have rendered the prejudicial remarks harmless." Id. at 476, 796 P.2d at 85 (citation and internal quotation mark omitted). While it is difficult to assess misconduct based on a series of actions, "the number of instances and the tenor of the exchange between judge and counsel [may] evince a premeditated pattern of improper questioning and an effort to alert the jury to the existence of inadmissible evidence." Id.

The following exchange occurred while the Prosecutor was questioning Thomas Hemingway, M.D. (Dr. Hemingway), the doctor who treated CW's injuries:

> [Prosecutor]: [Dr. Hemingway] does the type of wound that you treated in observed with regards to [CW] on his head area, is that consistent with being shoved into a wooden structure with an edge to it?
>
> [Dr. Hemingway]: Yes, it is.
>
> [Defense Counsel]: Your Honor, I would object. Foundation.
>
> THE COURT: Sustained.
>
> [Defense Counsel]: And I would move to strike the question as well as the answer.
>
> THE COURT: All right. The Court is striking the question and the response. The jurors are to disregard the last question by the attorney and the response by the witness.

[Prosecutor]: Your Honor, at this time, I move to have the doctor declared as an expert in the field of medicine with a specialty of emergency room.

. . . .

THE COURT: There being no objection, the Court here by qualifies Dr. Hemingway as an expert in the area of emergency medicine.

. . . .

[Prosecutor]: May I ask the question again now?

THE COURT: You can. And then we'll see what happens.

[Prosecutor]: Very well.

[Prosecutor]: [Dr. Hemingway], with regards to the head injury that you observed in this case, is it consistent with being an injury that was received from being shoved into a wooden structure?

[Defense Counsel]: Your Honor, again, I would object on foundation.

THE COURT: Sustained.

[Defense Counsel]: Your Honor, I would again move to strike the prosecuting attorney's same question that was previously stricken.

[Prosecutor]: Your Honor.

THE COURT: So ordered. The Court is striking the last question. The jurors are to disregard that question.

. . . .

(The following was held at the bench out of the hearing of the jury.)

[Prosecutor]: Your Honor, I'm at a loss as to what it is that is a lack of foundation.

THE COURT: [Prosecutor] just because he's qualified in the area of emergency medicine doesn't make him qualified to testify as to whether falling into a structure resolved [sic] in that laceration.

[Prosecutor]: If he's a doctor and I have him testify as to the type of injuries people would receive, also under Rule I believe 702 are qualified and it goes to the weight of evidence.

THE COURT: Lay the proper foundation. Lay the proper foundation. Leave it at that. Thank you. Thank you.

(At which time the bench conference concluded.)

THE COURT: Thank you, Dr. Hemingway.

[Prosecutor]: [Dr. Hemingway], how many times approximately have you treated injuries to -- lacerations to the head?

[Dr. Hemingway]: Hundreds of times.

[Prosecutor]: And in those experiences, have you as part of making an assessment and diagnosis as to how the injury was received, do you attempt to find out what it is that caused the instrument -- that caused the injury?

[Dr. Hemingway]: I typically would ask that question of the patient.

. . . .

[Prosecutor]: Yes. Have you received training and/or experience in the types of instruments that can cause injuries to the forehead?

[Dr. Hemingway]: Yes.

[Prosecutor]: And does that include lacerations sustained to the forehead?

[Dr. Hemingway]: Yes.

[Prosecutor]: And based upon your training and experience, are you able to answer whether this injury is consistent with having been received by being shoved into a wooden structure with an edge to it?

[Defense Counsel]: Your Honor, I would object. Same grounds. I would ask that it be stricken. And I would ask to approach.

THE COURT: Granted. And I'll request, [Defense Counsel], the Court is striking that last question by the [P]rosecutor. The jury is to disregard it. Dr. Hemingway, thank you.

(The following was held at the bench out of the hearing of the jury.)

[Defense Counsel]: Your Honor, I move for a mistrial based on cumulative prosecutory misconduct. Your Honor, the prosecutor has stated that three times now, three times she has asked the same questions that the damage to the head was caused by the -- by the planter. Your Honor, it is -- you cannot unring the bell three times now.

[Prosecutor]: Your Honor, this is a foundational question. If you look at the question that was asked by me, it was are you able to answer the question. Because Your Honor said that I lacked foundation. This is an attempt to gain foundation. I've asked that question in order to attempt to do such.

THE COURT: Not by asking leading questions and telling the doctor is this consistent with someone falling into a planter, not to mention your last two questions to the doctor, they're not relevant.

. . . .

[Prosecutor]: Your Honor, I am attempting to lay the foundation in asking the question. If you look at the last question I asked, the last question had to do with based upon his training and experience, is he able to answer the question as to whether this was consistent with having been caused by a wooden structure with a sharp edge. That's what the question was. It was a foundational question.

6

THE COURT: You have not laid the proper foundation. That's the Court's ruling.

[Prosecutor]: But that's the foundational question.

THE COURT: Don't argue, [Prosecutor]. Lay the proper foundation.

[Defense Counsel]: Your Honor, I would move for a mistrial, Your Honor. We're getting to the point, judge, if we start from the beginning, I'm not -- I'm going to start from the beginning and end here. We're not going in between. My opening statement, I was stopped at the first minute. It was here at the bench approximately five minutes -- forget about all that. Three times she told the jury three times the guy was struck in the head. The guy's gash was from the -- from the planter basically.

Your Honor, I would ask for a mistrial. There's just too much, too much at this point.

THE COURT: I'm denying that, [Defense Counsel]. I'll just state, this is on the record, cumulatively you have moved in that direction.

. . . .

(At which time the bench conference concluded.)

THE COURT: Thank you, Doctor.

[Prosecutor]: [Dr. Hemingway], based upon your training and experience, what is that laceration that was sustained to [CW's] head consistent with?

[Dr. Hemingway]: By the nature of the laceration, it appears to be from some blunt object.

[Prosecutor] In the opinions that you expressed today, do you hold them to a reasonable degree of medical certainty or probability?

[Dr. Hemingway]: Yes.

(Emphases added.)

Krueger has not overcome the presumption that the curative remarks of the circuit court render any prejudice harmless. Defense Counsel's objections were sustained, the questions were struck, and the jury was instructed to disregard the answers. Assuming the substance of the struck questions was prejudicial, surveillance footage, admitted as evidence, depicts the CW being shoved into the planter that caused his head laceration. The jury was thus able to see first hand how the injury occurred, alleviating any prejudicial impact.

The following exchange occurred while the Prosecutor was questioning a police detective:

[Prosecutor]: What is in those exhibits?

[Police Detective]: These are photographs for [CW's] prescription glasses.

[Prosecutor]: <u>Did there appear to be</u> some type of -- what looked like some type of substance on the glasses?

[Police Detective]: Yes, <u>it appeared to me that it has blood spots</u> on the lens and frames of the glasses.

[Defense Counsel]: Judge, move to strike. Foundation.

[Prosecutor]: Your Honor, <u>a layman can testify to what --</u>

THE COURT: Counsel, approach. Detective, once again, if you would please step down. Thank you.

(The following was held at the bench out of the hearing of the jury.)

[Defense Counsel]: Judge, he can testify as to what he saw, but to say that it's blood. I haven't objected actually previously. I'm trying to make this go as fast as we can. But there's no evidence that the officer knows that it's blood, so I don't think he should say it's blood.

[Prosecutor]: He didn't say that. <u>He said it looks like blood, and that's what I was asking him</u>.

THE COURT: <u>Actually, he didn't. He said it's blood</u>.

[Defense Counsel]: He said it's blood.

[Prosecutor]: He said blood?

THE COURT: <u>Yes. He didn't say it appeared or -</u>

[Defense Counsel]: Yeah, I mean, judge.

[Prosecutor]: <u>Actually, I think my question was what did it appear to look like</u>. That was my question.

THE COURT: <u>No. Is there a substance on the glasses, that's what you asked. And he said, yes, blood</u>.

[Prosecutor]: I think if you have access to it, I think what you will see is I said what it appeared like.

THE COURT: No.

[Prosecutor]: Very well.

THE COURT: And then [Prosecutor], on top of that for you to go <u>make a commentary on the record about even a layman could tell is inappropriate and unprofessional</u>.

[Defense Counsel]: Hang on, judge. Let me tell you something, Your Honor. I haven't said anything now in a while, because I'm calmed down. You know, the State versus Torres, Genora Torres, that's the last case.

THE COURT: I'm familiar with that case.

[Defense Counsel]: With respect to layman evidence on being an expert, I know that case, because that's my case. I'm kind of holding back over here about the witness' testimony about making conclusions as to items of evidence. But for her to say that everybody knows it, I don't know.

[Prosecutor]: Your Honor, I was responding to the Court's question at the time of, counsel, you were asking me from my position I believe at that time, and I was responding to what my position was with regards to that. He objected, and I was responding to it.

THE COURT: Right. But making a commentary on the record <u>even a layman could tell that it's blood is inappropriate</u>, unprofessional bordering on unethical.

[Prosecutor]: Your Honor, I disagree with that, but I accept the Court's response.

THE COURT: You disagree? You disagree with the Court?

[Prosecutor]: I disagree that that is correct, but I accept the Court's response.

THE COURT: Wait. You disagree with what, that you said it?

[Prosecutor]: No, I --

THE COURT: Or the Court's ruling?

[Prosecutor]: I disagree that that is borderline unethical. I disagree that it's inappropriate for me to say that, because I believe that a layman, we all believe that a layman can testify that something looks like blood.

THE COURT: Not when the question is was there a substance on the glasses and the answer is yes.

[Prosecutor]: <u>I believe and I would believe that the record will bear out that what I asked was was there a substance that appeared to look like something</u>.

THE COURT: <u>You didn't use the word appear</u>.

[Prosecutor]: I would ask if the --

THE COURT: I'm sustaining the objection. I am going to strike the last question and the answer. And you rephrase your question.

. . . .

[Defense Counsel]: Judge, I'm sorry, I move for mistrial again. All of this unnecessary delay tactics, being cautioned and warned many times about asking the proper questions. And then when confronted, [Prosecutor] simply cannot accept the Court's ruling. And I'm left standing here after I make an objection, a proper objection, I'm left standing here and the jury sees me standing here biting my tongue for approximately this time another three minutes. It gives a very, very bad impression on [Krueger's] right to a fair trial.

THE COURT: All right. Motion denied.

[Defense Counsel]: Thank you.

(At which time the bench conference concluded.)

(Emphases added.) This record does not reflect prosecutorial misconduct. The circuit court misheard the Prosecutor's question and the response.

While questioning the same detective, the following transpired:

[Prosecutor]: On May 5th, 2011, was [Krueger] placed under arrest for this incident?

[Police Detective]: Yes, he was.

[Prosecutor]: And did you see him on May 5th, 2011, while he was under arrest?

[Police Detective]: Yes, I did.

[Prosecutor]: And I show you what's marked as State's Exhibit 5. Do you recognize what -- who this is a photograph of?

[Police Detective]: Yes, I do.

[Prosecutor]: Can you tell us is this how Mr. --

[Defense Counsel] Your Honor, again I would object foundation. And now --

THE COURT: All right. Sustained.

[Defense Counsel]: I would ask that it all be stricken, judge.

THE COURT: I'm not going to strike anything. But [Prosecutor], you may attempt to lay the proper foundation.

[Prosecutor]: Do you recognize -

[Defense Counsel]: <u>Your Honor, may I ask that [Prosecutor] put that exhibit away until she lays the proper foundation</u>.

THE COURT: Yes.

[Prosecutor]: Your Honor, this is the proper foundation as part of laying it.

THE COURT: <u>Ms. Mendes, step back to the podium. Place that document down, and you may proceed to attempt -- place it down, face down.</u>

[Defense Counsel]: Your Honor, may we approach?

THE COURT: Yes. Thank you, Detective.

(The following was held at the bench out of the hearing of the jury.)

[Defense Counsel]: <u>Your Honor, I'm -- I'm pretty certain it was not purposeful what [the Prosecutor] just did</u>

10

with the photograph. But you told her to put it down. I didn't say anything. You told her to put it down, and she turned it over in such a way that the jurors could see it.

[Prosecutor]: I did not. She said flip it over, and I --

THE COURT: [Prosecutor] the reason I told you the flip it over is you have to remember the proximity of the podium and the jurors who are in the back.

[Prosecutor]: And Your Honor, I was close to the podium.

THE COURT: Jurors 11 and 12.

[Prosecutor]: And Your Honor, I was close to the podium. And when Your Honor said flip it over, I immediately flipped it over and I did it very fast. And I did not raise it above the podium side. And I would say part of laying a foundation in entering evidence is you ask the witness do they recognize that individual. How do they recognize it. So I'm at a loss as to how it is --

[Defense Counsel]: Judge, I believe you've already ruled on that. My objection is that you told her not to publish it.

[Prosecutor]: I did not.

[Defense Counsel]: You know let me finish. I let you finish.

THE COURT: All right. [Defense Counsel].

[Defense Counsel]: Please. I didn't say anything. But I saw her, the way she -- first, she comes up walking with it face fronting face. When she gets to the podium, judge, she flips it over with the picture showing towards the jury.

[Prosecutor]: Let's look at the cameras.

THE COURT: All right. [Prosecutor], leave it on the podium face down until you lay the proper foundation. And then I'll make a ruling.

[Prosecutor]: Thank you.

(At which time the bench conference concluded.)

. . . .

(At which time the jury was escorted out of the courtroom.)

. . . .

THE COURT: Okay. Counsel, first of all, [Prosecutor], throughout the trial, you have taken great caution to inform whoever the witness was on the stand to be very careful when they were looking at evidence, excuse me, looking at exhibits that were not in evidence. You took great pains to tell them it's not in evidence, don't show it. Again great pains, witnesses time and time again, put it off to the side, look into the envelope without showing it to the jurors.

Now, despite your instructions to the witnesses,

11

[Prosecutor], <u>the concern that this Court had is you walked forward with the photograph to the witness, okay. You walked back with the photograph. I'm not saying that you were waiving it at the jurors, but the proximity of the podium and this is where you placed the podium, keep in mind that, and this Court's /SRAPBT acknowledge view of where jurors number -- this would be 7, 8, 9, 10 -- 11 and 12 are sitting. This Court was concerned that they could see what's on the podium given their proximity to the podium and the design of the podium.</u>

<u>That's why I cautioned you, [Prosecutor], to be careful and to place it face down on the podium</u>.

[Prosecutor]: And Your Honor, I would note that when I came back to the podium, that was covered like that already, because counsel saw first. And I also if I may sit here for a moment is in sitting down here, the angle of the podium, you cannot see what's in the corner here. It was -- the photograph was in the extreme corner, and when I approached the witness with it, I approached the photograph like this. I never approached it like this.

THE COURT: Yes, and [Prosecutor], what I told you at the bench was lay the proper foundation before you approach the witness with any exhibit.

[Prosecutor]: <u>Part of laying a proper foundation for a photograph is to show a witness an exhibit and ask if you recognize what this depicts</u>.

THE COURT: [Prosecutor], the Court made rulings on that very issue at the bench. If you disagree, deal with it. But don't argue with the Court, okay. Now, again the reason why I told you be careful is I cannot fathom why you would have witnesses take such extreme cautions, but you yourself appear to be rather laxed about taking those cautions yourself.

[Prosecutor]: And how would –

THE COURT: I already made a ruling, [Prosecutor], that that does not come in until you lay the appropriate foundation.

[Prosecutor]: And for the record, I would like to know how is it that I was laxed in handing that photograph off when I've never shown it to, because your clerk would have mentioned it if I had been showing it to the jury. At any time when I approached with that exhibit, I did not show it to the jury. When I came back, Your Honor asked me to flip it over. I did. The last time we were here --

THE COURT: [Prosecutor], I don't want a mistrial, okay. I don't want to do this trial again if I can help it.

[Prosecutor]: I agree. I agree.

THE COURT: <u>So the reason why I cautioned you about being more careful is so that we can avoid any prejudice</u>. I also made my ruling very, very clear repeatedly at the bench as to the lack of foundation on this exhibit coming in. I also made it very clear unless you lay the proper -- appropriate foundation, the Court is not going to receive it. Okay. So over the lunch hour, you think about the Court's ruling. You figure it out. But I'm not going to tell you how to do your job.

. . . .

[Defense Counsel]: Your Honor, I have to ask for a mistrial once more. You know what, judge, as an officer of the Court, there's cameras here. What occurred prior to my -- the last time I approached the bench with my concern of the photograph being seen by the jury, which is an arrest photograph of [Krueger], prior to that, judge, the cameras will show after you admonished [the Prosecutor], she came back to the podium. She flipped the photograph over in such a way that the photos were in clean view of the jury.

I'm sure she didn't do that purposefully. I have no doubt of that. I don't think she would do something like that. Nevertheless, I have some -- I think maybe perhaps some of the jurors saw it. And I would beg to think that they probably did. Compound that, judge, compound that. And I came up after that. Compound that, when I came back, I'm not sure if the sequence was then, but when I came back, the photograph was face up. And I did not say [the Prosecutor] lied.

Because after I came up walking this way, I hope the video is seeing it, yes, [the Prosecutor] covered it with her yellow pad. But it was -- it was up. And as an officer of this Court, I can tell you right now I'm pretty certain that the jurors saw it, and that prejudice cannot be undone. The issue we've mentioned many, many times is identification. We already had the Detective testify yes, [Krueger] didn't have a tattoo. Why even go there? I don't understand the logic. What, overkill for circumstantial evidence? They have the Detective saying he didn't have a tattoo.

Judge, there has to be accountability. There has to be accountability. I think it is now -- you know, judge, it's over. Now, whether if you grant my mistrial, whether or not we have another trial, whether or not they can refile, then it will be subject to different types of motion at the appropriate time. But in this trial, enough is enough. Enough, judge. I mean how much more? I also played the game. I got to tell you I played the game.

Because I got irritated and I got upset. And now you can tell by my voice and you can tell by the way I'm up here. And also, many, many times when I was interrupted, but it's okay, you can tell. But I'm not trying to be unfair. We're not trying to be unfair here, but enough is enough, judge.

He cannot get a fair shake. It's done. [Krueger] cannot get a fair shake. It's done. And it's through no fault of [Krueger]. It's through no fault of the Court. It's through no fault of the panel. And it is what it is. I'm sorry, judge, I think this Court has to -- this Court, this Court has to stop it already.

THE COURT: All right. Thank you, [Defense Counsel]. I am not going to grant that motion for a mistrial. I'm not convinced that there's been prejudice. I'm not convinced that if there has been prejudice that it's something that the Court cannot cure. But let me just state, [Defense Counsel], that I do agree with the statement that you just made on the record about trying to understand the persistence of the prosecutor with respect to this particular exhibit.

As I recall, [Defense Counsel], you did not object when the question was asked and answered about the arrest of [Krueger], I think it was on May 5th, 2011. You did not object when the

> question was asked and answered about whether the witness was aware of any tattoo that he had in court today and then at the time of the arrest.
>
> There was no objection to the request for the Detective to identify [Krueger].
>
> [Defense Counsel]: [Krueger] even stood up, Your Honor.
>
> THE COURT: So that is part and parcel of the Court's sustaining the objection. I'm going to leave it at that, so both of you have homework to do over the lunch hour. [Defense Counsel], go address the issue of Counts. [Prosecutor], go figure out what your next step is going to be.

(Emphases added.)

There does not appear to be any improper motive to alert the jury to the existence of inadmissible evidence. Defense Counsel acknowledged the alleged mishandling was not purposeful and the circuit court found any potential prejudice was curable. We cannot conclude that the inadvertent display of this photograph was part of a premeditated effort to alert the jury to the existence of inadmissable evidence.

### C. Inappropriate Gestures

Following the exchange regarding the photograph and foundation issues, the circuit court warned the Prosecutor:

> Now, also, [Prosecutor], and I'm going to state this on the record, I do not appreciate the looks that you're making in response to the Court's admonishment of you. Let me warn you again as I did earlier, [Prosecutor], continued behavior, rolling your eyes, shaking your head when the Court is talking, this is all on the record may very well lead to the Court holding you in contempt.
>
> So be very mindful of that, [Prosecutor]. You have tried my patience repeatedly throughout this trial. And it's wearing thin. And I just want the record to be very clear about that. I do not appreciate and I think it's very disrespectful for you to question the Court's rulings as you have and then to be making physical gestures and faces on the record.
>
> [Prosecutor]: Very well, Your Honor.

(Emphasis added.) Krueger contends the Prosecutor's "antics in the courtroom was [sic] so extreme as to justify the court's admonishment." Krueger reasons that because the Prosecutor "rolled her eyes and shook her head at the court's rulings, in all likelihood, the [Prosecutor] was doing the same to the defense, resulting in a denigration of the defense as a whole." This speculative argument is not supported by the record.

### D. Expressing personal opinion about witness candor

Prosecutors must refrain from expressing personal views about a defendant's guilt or credibility of witnesses. See State v. Marsh, 68 Haw. 659, 660, 728 P.2d 1301, 1302 (1986). Krueger contends the Prosecutor "vouched for the credibility of [Kilmer] during both opening remarks and closing arguments[.]" During opening remarks the Prosecutor stated:

> And you will hear from [Kilmer]. She was granted what's called transactional immunity to make her testify. She had been charged, and she's charged with the offenses of robbery in the first degree as well as attempted assault in the first degree as an accomplice to what took place by the [Krueger] as well as [Counts]. And she will come in here under this grant of immunity to testify as truthfully, and she doesn't get prosecuted for perjury.
>
> [Defense Counsel]: Your Honor, may we approach. I do apologize.
>
> THE COURT: Yes, yes.
>
> (The following was held at the bench out of the hearing of the jury.)
>
> [Defense Counsel]: Your Honor, that's improper opening. It's vouching for the anticipated witness. Whether she testifies truthfully or not, that remains to be seen.
>
> [Prosecutor]: Your Honor, I didn't say she's testifying -- I said that she's testifying under a grant of immunity, that though if -- as long as she testifies truthfully, which is as part of that, she doesn't get prosecuted for perjury. He's already stated on the record that he plans to bring in the fact of what she could face and why she's saying this. This is in anticipation of what he has said.
>
> [Defense Counsel]: Your Honor, the trier of facts makes a determination as to whether the witness has testified truthfully or not. I would move for a mistrial at this time based on prosecutorial misconduct. The witness has yet to testify, and the [Prosecutor] is now saying that we granted her immunity because she's going to testify truthfully.
>
> Your Honor, the penalty if she testifies untruthfully is perjury. That's it, nothing else.
>
> THE COURT: First of all, motion denied. [The Prosecutor] did state that if she doesn't, she did reference the perjury. So objection noted. Overruled. Objection noted. Let's move on.

(Emphases added.)

During closing arguments, the Prosecutor stated:

> Then [Defense Counsel] tells you, well, geez, she got this immunity grant. Remember though what does that say?

The minute she got -- he himself said it. She got up there. The minute she testified, her charges went away. Why is she still saying it's him? Because like any other witness who testifies and swears to tell the truth, she told the truth. That's what happened.

[Defense Counsel]: Objection, Your Honor. Improper.

THE COURT: All right. Counsel, approach.

(The following was held at the bench out of the hearing of the jury.)

[Defense Counsel]: She said it's a personal opinion. She said she told the truth.

THE COURT: This is argument. So I'm overruling.

[Defense Counsel]: Okay.

[Prosecutor]: Thank you.

(At which time the bench conference concluded.)

[Prosecutor]: The evidence shows so. She told the truth. And last but not least, she's corroborated by a video that she had no -- never seen. Take a look at that video again if you need to. What you will see is you will witness that man participate as a full-blown participate -- participant in robbery in the second degree. They used force during the committing of that incident.

(Emphases added.)

We review the Prosecutor's remarks in context. See State v. Moore, No. 30001, (App. May 10, 2010) (SDO). In Moore, the defendant contended the prosecutor's statement that two witnesses "told the truth, the honest truth," made during the rebuttal argument, was improper and constituted prosecutorial misconduct. Id. at 1. This court concluded in Moore that the statement recharacterizing and responding to defense counsel's closing argument, was proper, and did not deprive the defendant of a fair trial.

In this case, the Prosecutor's alleged personal opinion during closing remarks responded to Defense Counsel's argument that the witness was biased from her grant of immunity. Moreover, this statement was ultimately tethered to evidence and proper in context.

**E. The circuit court did not err in allowing the case to proceed as to Robbery 2.**

Krueger contends the circuit court erred in denying his motion for judgment of acquittal on the Robbery 1 charge and

amending the charge to Robbery 2, and he bases his challenge on the contention that Robbery 2 is not an included offense of Robbery 1.

Krueger cites to State v. Kroll, 106 Hawai'i 528, 107 P.3d 1201 (App. 2005) regarding the standards for amending a charge under HRPP Rule 7(f). We note that Kroll was based on a prior version of HRPP Rule 7(f) and that the rule was subsequently amended in 2005. HRPP Rule 7(f) now reads:

> **Rule 7. Indictment, Information, or Complaint**
>
> . . .
>
> **(f) Amendment.**
>
> (1) The court may permit a charge other than an indictment to be amended at any time before trial commences if substantial rights of the defendant are not prejudiced.
>
> (2) The court may permit a charge other than an indictment to be amended after trial commences and before verdict or finding if the defendant personally, knowingly, and voluntarily agrees to the amendment on the record.

Even under the amended rule, however, the key question is whether Robbery 2 is an included offense of Robbery 1. Pursuant to HRS § 701-109(4) (1993), "[a] defendant may be convicted of an offense included in an offense charged in the indictment or the information." Therefore, if Robbery 2 is an included offense to the original charge of Robbery 1, there would be no amended charge and HRPP Rule 7(f) would not apply. See, e.g. United States v. Martinez, 430 F.3d 317, 340 (6th Cir. 2005) ("[T]his results in neither a prejudicial variance from, nor a constructive amendment to the indictment because [the defendant] was merely convicted of a lesser-included offense and all the elements of the former necessarily include those of the latter"); United States v. Cabrera-Beltran, 660 F.3d 742, 753 (4th Cir. 2011), cert. denied, 132 S.Ct. 1935 (2012); United States v. Solorio, 337 F.3d 580, 590 (6th Cir. 2003); People v. Kincaid, 316 N.E.2d 220, 224 (Ill. App. Ct. 1974).

Krueger argues that Robbery 2 is not an included offense of Robbery 1 pursuant to HRS § 701-109(4) because the requisite intent for each offense is different, and because Robbery 2 requires an "additional element" that force be used

17

against another person that is "present" during the offense. Krueger was indicted for Robbery 1, specifically, for violating HRS § 708-840(1)(a), which proscribes, in relevant part, the act of "intentionally or knowingly inflict[ing] . . . serious bodily injury upon another" while "in the course of committing theft." The trial court, at the State's request, instructed the jury to consider whether Krueger was guilty of HRS § 708-841(1)(a), which proscribes, in relevant part, the act of "us[ing] force against the person of anyone present with the intent to overcome that person's physical resistance or physical power of resistance" while "in the course of committing theft."

HRS § 701-109(4) provides that:

> (4) A defendant may be convicted of an offense included in an offense charged in the indictment or the information. An offense is so included when:
>
> (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
>
> . . . .
>
> (c) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a different state of mind indicating lesser degree of culpability suffices to establish its commission.

HRS § 701-109(4).

> Pursuant to HRS § 701-109(4)(a), the general rule is that "an offense is included if it is impossible to commit the greater without also committing the lesser." State v. Burdett, 70 Haw. 85, 87-88, 762 P.2d 164, 166 (1988). In applying HRS § 701-109(4)(a), we have previously held that several factors may be considered in determining whether an offense is a lesser included offense of another: (1) the degree of culpability; (2) the legislative statutory scheme; and (3) the end result.

State v. Friedman, 93 Hawai'i 63, 72, 996 P.2d 268, 277 (2000) (citations omitted).

"Regarding the degree of culpability, the rule is that the lesser included offense cannot have a mental state greater than or different from that which is required for the charged offense." Id. (quoting State v. Alston, 75 Haw. 517, 534, 865 P.2d 157, 166 (1994)). Yet, even where the requisite mental state differs between the two offenses, if the legislature

18

clearly intended one offense to be a lesser included offense of another, such intent prevails.  See Rumbawa, 94 Hawai'i at 519-20, 17 P.3d at 868-69 (citing State v. Smythe, 72 Haw. 217, 811 P.2d 1100 (1991), in holding first degree reckless endangerment to be a lesser-included offense of second degree attempted murder despite the difference in attendant mental states).  This may also obtain even where it is possible to commit the greater offense without necessarily committing the lesser offense.  Id.

Here, the mental states described by the two statutes differ; the greater offense requires that the person "intentionally or knowingly inflict[] . . . serious bodily injury" upon another, while the lesser offense requires that the person "use[] force against the person of anyone present with the intent to overcome that person's physical resistance or physical power of resistance."  Here too, a person might commit the former in such a way that he does not commit the latter.  Yet, the relation of the two statutes within the legislative scheme makes it clear that the legislature intended one to be included within the other.  The accompanying commentary[2] and related legislative history reinforces that conclusion:

> When the Legislature adopted the Code in 1972, it consolidated the Proposed Draft's three degrees of robbery into two degrees.  The simple threat or use of force or the reckless infliction of serious bodily injury in the commission of a theft constitutes robbery in the second degree and carries a class B felony sanction.  Where the person committing the above acts is armed with a dangerous instrument, or intentionally inflicts serious bodily harm, or attempts to kill, the offense is increased to the first degree and its sanction to a class A felony.

HRS § 708-841 cmt. (1993) (emphases added).  The legislative intent is no less clear here than in Rumbawa; pursuant to HRS § 701-109(4), second degree robbery is a lesser included offense

---

[2]    "The Commentary accompanying the Hawaii Penal Code . . . may be used as an aid in understanding the provisions of the Code, even though it was not intended as evidence of legislative intent."  State v. Aluli, 78 Hawai'i 317, 321 n. 5, 893 P.2d 168, 172 n. 5 (1995) (citation omitted); see also HRS § 701-105 (1993).  Furthermore, the legislative history of the statutes and their amendments do not indicate any intent to separate the two offenses in the legislative statutory scheme.  See Conf. Comm. Rep. No. 2, in 1972 House Journal, at 1045, 1972 Senate Journal, at 744; H. Stand. Comm. Rep. No. 1231-98, in 1998 House Journal, at 1551; S. Stand. Comm. Rep. No. 2596, in 1998 Senate Journal, at 1051.

of first degree robbery. See Rumbawa, 94 Hawai'i at 520-21, 17 P.3d at 869-70.

It is well-settled that trial courts must "instruct juries as to any included offenses having a rational basis in the evidence without regard to whether the prosecution requests, or the defense objects to, such an instruction." Haanio, 94 Hawai'i at 407, 16 P.3d at 248.

Here, like Haanio, the evidence provided a rational basis for the included offense of Robbery 2. See Haanio, 94 Hawai'i at 413-17, 16 P.3d at 254-58 (rational basis for Robbery 2 instruction because the evidence showed the defendant was intoxicated and therefore, the defendant "may have possessed a reckless, rather than an intentional, state of mind with respect to his conduct[.]") Witness testimony identified Krueger and surveillance footage showed Krueger using force to restrain the CW. The circuit court subsequently "made the decision following the evidentiary portion of the trial to reduce the charges against [Krueger]."

In State v. Matautia, 81 Hawai'i 76, 912 P.2d 573, (App. 1996), we held that the trial court's amending the charge to a non-included offense, minutes before trial, prejudiced the defendant's right to prepare an adequate defense because the elements of the original charge and amended charge differed. The instant case is distinguishable because the evidence adduced at trial provided a rational basis for Robbery 2. We conclude that Robbery 2 is an included offense of Robbery 1, that HRPP Rule 7(f) is not applicable, that Krueger's right to prepare an adequate defense was unaffected by the circuit court's amending the Robbery 1 charge to an included offense, and thus the circuit court did not err in allowing the Robbery 2 charge to reach the jury.

**F. Judgment of Acquittal**

The circuit court found the evidence, viewed in the light most favorable to the Prosecution, was not sufficient to enable a reasonable person to fairly conclude Krueger was guilty of Robbery 1 beyond a reasonable doubt, but was sufficient to

enable a reasonable person to fairly conclude Krueger was guilty of Robbery 2 beyond a reasonable doubt.

Viewing the witness testimony and surveillance footage in the light most favorable to the prosecution, we agree with the circuit court that Krueger, while in the course of a theft, used force to restrain and overcome the resistance of CW. See State v. Clemmer, No. 30197 (App. Sept. 9, 2010) (SDO) (Credible witness testimony was sufficient for person of reasonable caution to conclude defendant committed Robbery 2.). The circuit court properly denied Krueger's motion for judgment of acquittal.

## IV. CONCLUSION

Accordingly, the "Judgment of Conviction and Sentence" entered August 27, 2012 in the Circuit Court of the Fifth Circuit is affirmed.

DATED: Honolulu, Hawaiʻi, November 29, 2013.

On the briefs:

Emmanuel G. Guerrero
for Defendant-Appellant.

Tracy Murakami
Deputy Prosecuting Attorney,
County of Kauaʻi
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

21